**AGRICULTURAL WAREHOUSE, INC., Appellant,**

v.

**Ruben UVALLE, and Texas Employers Insurance Association, Appellees.**

**No. 05–87–00929–CV.**

Court of Appeals of Texas, Dallas.

July 29, 1988.

Rehearing Denied Sept. 12, 1988.

Sidney H. Davis, Jr., Dallas, for appellant.

John E. Wall, Jr., Dallas, for appellees.

Before STEPHENS, HECHT and KINKEADE, JJ.

KINKEADE, Justice.

This is an appeal from a personal injury suit brought against Agricultural Warehouse, Inc. (AWI), the premises owner, by Ruben Uvalle, an employee of Delta Engcon, Inc. (Delta), a steel erector employed by AWI to construct a steel building. Uvalle was injured when he fell a distance of twelve to twenty feet while on the job site. He brought suit against AWI and J & O Concrete (J & O), the concrete contractor for the job, alleging that his injuries were caused by their negligence. J & O failed to appear at trial and wholly made default. The jury found AWI ninety percent negligent and J & O ten percent negligent. The trial court awarded $462,-723.21 to Uvalle and $35,659.34 to the intervenor, Texas Employers Insurance Association, plus attorney's fees. AWI appeals by twenty-six points of error, and Uvalle brings one cross-point. Agreeing that the trial court erred, we sustain several of AWI's points of error; therefore, we reverse and remand the cause for new trial. As Uvalle filed no cost bond on appeal, we are unable to consider his cross-point.

In July 1981, AWI decided to have a steel warehouse building erected. AWI hired Delta to construct the building. Upon Delta's recommendation, AWI hired J & O. J & O poured the concrete foundation and allegedly was under the impression that Delta was in charge of placing "J"-shaped bolts in the slab. When no one appeared on the site to install the bolts, Oscar Cervantes, one of J & O's partners, attempted to place the bolts in accordance with the bolt plan in the hardening concrete. Delta discovered that some of the bolts were misaligned when it began to erect the building's approximately twenty-two-foot-tall steel columns. Delta informed AWI of the misalignment. AWI then contacted Cervantes who was told there was a problem at the job site. Delta showed J & O the misplaced bolts and J & O proceeded to cut off those bolts. J & O then drilled oversized holes in the slab in the correct spot, filled the holes with grout, and placed the "sleeve anchor bolts" J & O had purchased in the new holes. Uvalle was part of the Delta crew erecting the columns on September 15, 1981. The crew placed the column to fit on the anchor bolts and "someone" tightened down the nuts. Uvalle leaned a ladder up against an erected column to connect a "cross member" between two of the columns. While he was near the top of the ladder, he heard a cracking noise. The column gave way and he fell twelve to fourteen feet to the slab, landing on his feet and hitting the column with his buttocks.

In its first point of error, AWI asserts that the trial court erred because its instruction to the jury concerning AWI's duty of care is a misstatement of the law. The trial court included the following instruction in the charge to the jury: "You are instructed that when a landowner such as Agriculture Warehouse, Inc. does not hire a general contractor then the landowner has a duty under the law to *make certain* that the construction site is maintained in a safe condition." (Emphasis added.)

The general rule is that an owner or occupier of land does not have a duty to see that an independent contractor performs work in a safe manner. *Redinger v.*

*Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985). The owner has a duty to use *reasonable care* to keep the premises under his control in safe condition. *Redinger*, 689 S.W.2d at 417; *Smith v. Henger*, 226 S.W.2d 425, 431 (Tex.1950). Generally, the owner is not liable for the acts or omissions of an independent contractor or the independent contractor's servants. *Tanner v. BDK Production Co.*, 671 S.W.2d 941, 944 (Tex.App.—Corpus Christi 1984, no writ). Whether the duty has been reasonably discharged depends on the facts of each case. *Smith*, 226 S.W.2d at 431.

■ The trial court further instructed the jury that AWI was "acting as the general contractor for the building under construction." AWI disputes this statement and there is contradictory evidence on the issue; however, a general contractor who is in control of the premises is charged with the same duty as an owner or occupier. *Redinger*, 689 S.W.2d at 417. Whether AWI is considered to be merely the owner/occupier of the property, or the general contractor, the trial court has misstated the law in its instruction to the jury. The standard is: the duty to use "reasonable care" to keep the premises safe, not the greater burden "to make certain" the premises is maintained in a safe condition. An instruction that imposes a greater burden than the law requires is harmful because it reasonably could and probably did cause the rendition of an improper judgment. *Line Enterprises, Inc. v. Hooks & Matteson Enterprise, Inc.*, 659 S.W.2d 113, 117 (Tex.App.—Amarillo 1983, no writ); *see Sanders v. Davila*, 593 S.W.2d 127, 130 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.). Due to the improper submission, this cause must be reversed and remanded for new trial. *See Marathon Oil v. Salazar*, 682 S.W.2d 624, 629 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). We sustain AWI's first point of error.

■ In order to properly address point of error two, we must first dispose of point of error eleven in which AWI complains that the court erred in excluding evidence concerning Delta's conduct.

Delta was Uvalle's employer and, therefore, was not a party to the suit because there had been a workers' compensation settlement. In all good faith, the trial court attempted to comply with the Texas Supreme Court's holding in *Varela v. American Petrofina Co.*, 658 S.W.2d 561 (Tex.1983). Unfortunately, the court misapplied the concept set out in the opinion. *Varela* does stand for the proposition that an employer's negligence cannot be considered in a third-party negligence action for the purpose of reducing the third-party's damages. However, this restriction is applicable *only* with respect to the entry of judgment. *See Williams v. Union Carbine Corp.*, 734 S.W.2d 699, 702 (Tex.App. —Houston [1st Dist.] 1987, writ ref'd n.r. e.). The holding in *Varela* does not expressly exclude evidence at trial of an employer's negligence. *Id.* We agree that the trial court improperly excluded evidence of Delta's negligence which contributed to the accident causing Uvalle's injuries. To obtain reversal of the judgment on the ground of improperly excluded evidence, the appellant has the burden to show that the rejection of the testimony he attempted to offer was error reasonably calculated to cause and probably did cause the rendition of an improper judgment. TEX.R.APP. P. 81(b). AWI made a proper bill of exceptions in accordance with Texas Rules of Appellate Procedure 52; therefore, we can review the evidence to determine if its exclusion constitutes reversible error.

The excluded evidence of Delta's negligence includes: (1) Delta's contractual obligation to place the original bolts in the concrete; due to the fact that Delta was unprepared to place the bolts, the bolts were misaligned, thereby leading to the need for replacement bolts; (2) the court permitted testimony to be introduced that the practice of leaning ladders against free standing columns is dangerous; however, the court would not permit Uvalle to testify that he personally thought the method was unsafe and that when he had been employed by other construction companies, scaffolding or other safer methods of erecting columns had been used. Uvalle testi-

fied outside the jury's presence that Delta made the decision of how the columns should be erected and he was afraid to complain of the danger for fear he would lose his job; (3) Delta's decision not to use alternative methods of erection procedure, specifically, a forklift with a "man carrier" or scaffolding. We hold that the exclusion of the evidence as described above could reasonably cause and probably did cause the rendition of an improper judgment. Therefore, we sustain AWI's eleventh point of error.

■ AWI complains in its second point of error that the trial court erred by refusing to submit its tendered definition and instructions. AWI's requested definition sets out the legal definition of "control" in regard to the degree of control which must have been exercised by AWI in order to hold it responsible for an independent contractor's negligence. The requested instructions state:

Requested Instruction No. 1

In the absence of "control", as defined above, an owner or occupier of land, such as Agriculture Warehouse, Inc., does not have a duty to see that an independent contractor performs its work in a safe manner. Where the danger arises out of an activity conducted by an independent contractor, the duty to protect against such danger is that of the independent contractor.

Requested Instruction No. 2

An owner or occupier of premises, such as Agriculture Warehouse, Inc., can assume that an independent contractor will perform his responsibilities in a safe and workmanlike manner, taking proper care and precautions to assure the safety of his employees. An owner or occupier of premises has no duty to warn an independent contractor's employees of dangers which arise from the performance of their work.

Requested Instruction No. 3

An owner or occupier of premises, such as Agriculture Warehouse, Inc. has no duty or obligation to supervise or police the work of independent contractors such as J. & O. Concrete Company or Delta to insure that appropriate safety precautions were taken.

Requested Instruction No. 4

An owner or occupier of premises, such as Agriculture Warehouse, Inc., is not liable for the acts or omissions of an independent contractor, such as J. & O. Concrete Company or Delta, or the acts or omissions of an employee thereof.

■ The trial court has considerable discretion in determining what constitutes necessary and proper instructions. The only requirement is that it must define legal and technical terms. *Olivares v. State*, 693 S.W.2d 486, 492 (Tex.App.—San Antonio 1985, writ dism'd); *see* TEX.R.CIV. P. 277. The test for abuse of discretion is whether the court's action in refusing to submit the requested definition and instructions was arbitrary or unreasonable. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985).

The trial court refused to submit the requested definition and instructions while it was under the false impression that evidence of Delta's negligence was inadmissible and that the landowner had the duty to *make certain* that the construction site was safe. We hold that the trial court's refusal to submit this legally correct definition and instructions was an abuse of discretion. We sustain AWI's second point of error.

■ In its sixth point of error AWI claims that the trial court's definition of "inherently dangerous work" is a misstatement of the law. Jury question one includes an instruction defining the term to mean "that the nature of the work itself, or of the instrumentalities which must necessarily be used in doing the work, if unskillfully or carelessly done or used, involved a grave risk of serious bodily harm or death."

AWI argues that virtually *any* activity, if "unskillfully or carelessly done" involves a risk of serious bodily injury or death. We agree. The term "inherently dangerous work" has most recently been defined in *King v. Associates Commercial Corp.*, 744 S.W.2d 209, 212 (Tex.App.—Texarkana

1987, writ pend'g), which states that the term refers to "work which will probably result in injury to a third person or the public." *See also Gessell v. Traweek,* 628 S.W.2d 479, 481 (Tex.App.—Texarkana 1982, writ ref'd n.r.e.). The court in *Goolsby v. Kenney,* 545 S.W.2d 591, 593–94 (Tex. Civ.App.—Tyler 1976, writ ref'd n.r.e.), points out that the law is well settled that one who contracts for work from an independent contractor is not liable for the independent contractor's negligence except where the work is inherently dangerous, however skillfully done. The case goes on to state that an instrumentality is inherently dangerous only if it is "dangerous in its normal or non-defective state, like explosives." *Id., quoting Roosth & Genecov Production Co. v. White,* 152 Tex. 619, 262 S.W.2d 99, 101 (1953). We hold that the trial court's instruction was improper and reasonably could and probably did cause the rendition of an improper judgment. *See Line Enterprises,* 659 S.W.2d at 117. We sustain AWI's sixth point of error.

AWI states in point of error twenty-two that the court erred in failing to grant its motion for new trial because the evidence is factually insufficient to support the jury's positive answer to questions one and two inquiring whether the construction activity was inherently dangerous.

Uvalle asked Oscar Cervantes of J & O if construction work was inherently dangerous. AWI objected to the question because there had been no definition given to the witness as to the meaning of "inherently dangerous". The court overruled the objection and Cervantes answered positively. Testimony was later given by Charles Wesley Peterson, an employee of Ceco Buildings Division, the company which purchased Delta. Peterson was questioned whether construction work is inherently dangerous. Uvalle defined the term to mean that the nature of the work itself or the instrumentalities used in doing the work, "if unskillfully or carelessly done or used would involve a grave risk of serious bodily harm or death." Peterson agreed that under Uvalle's definition the anchor bolts were an instrumentality that forms a part of inherently dangerous work.

As discussed above, the term "inherently dangerous work" has been defined incorrectly by Uvalle. Under a correct legal standard, the evidence is insufficient to support the jury's responses to the questions concerning whether the work was inherently dangerous because such a finding is clearly wrong and unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Great State Petroleum, Inc. v. Arrow Rig Service,* 714 S.W.2d 429, 432 (Tex.App.— Fort Worth 1986, no writ). The trial court has broad discretion to grant or deny a motion for new trial. *Grohn v. Marquardt,* 657 S.W.2d 851, 856–57 (Tex.App. —San Antonio 1983, writ ref'd n.r.e.). We hold that the trial court abused its discretion in denying AWI's motion for new trial. AWI's twenty-second point of error is sustained. As the above discussed points are dispositive of this appeal, we do not address AWI's other points of error.

By cross-point Uvalle complains that the trial court erred in granting AWI's motion to disregard jury findings and in failing to award exemplary damages in the judgment. Uvalle's cross-point places it in the role of an appellant. *See Essex Crane Rental Corp. v. Striland Construction Co.,* 753 S.W.2d 751 (Tex.App.—Dallas 1988); *Chapman Air Conditioning, Inc. v. Franks,* 732 S.W.2d 737, 742 (Tex.App.— Dallas 1987, no writ). As an appellant, Uvalle must timely file a cost bond pursuant to Texas Rules of Appellate Procedure 41(a). As no cost bond was filed, he is not entitled to have his cross-point considered. *See Essex Crane Rental,* at 758; *Chapman Air Conditioning,* 732 S.W.2d at 743.

The trial court's judgment is reversed and the cause remanded for new trial.